United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN ZAUCHA, JR.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE, Commissioner, Social Security Administration,<br><br>　　　　　Defendant. | Case No. C 11-03344 HRL<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 18, 19]** |

Plaintiff John Zaucha ("Zaucha") appeals a final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act. Before the court are the parties' cross-motions for summary judgment. Upon consideration of the papers filed by the parties,[1] and for the reasons set forth below, plaintiff's motion is denied and defendant's cross-motion is granted.[2]

**I. BACKGROUND**

Zaucha was born in 1960, has a high school education, and has worked in construction. Admin. R. ("AR") 13, 22. On March 6, 2008, he applied for a period of disability and disability

---

[1] This matter was submitted without oral argument pursuant to Civil Local Rule 7-1(b).

[2] All parties have consented to this matter being adjudicated by the undersigned. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

insurance benefits. AR 130-31. He claims that he became disabled following a work-related back injury that occurred on August 10, 2004; he also complains of a knee injury suffered during treatment for the back injury, kidney stones, and episodes of dizziness and fainting. AR 15-16, 18. Zaucha's application was denied initially and upon reconsideration. AR 73-74. An Administrative Law Judge ("ALJ") conducted a hearing on January 26, 2010 and thereafter issued a written decision concluding that Zaucha was not disabled. AR 13-23. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. AR 1. Zaucha seeks now seeks judicial review of the denial of benefits.

## II. LEGAL STANDARD

### A. Standard of Review

This court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258.

### B. Standard for Determining Disability

Disability insurance benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "ALJs are to apply a

five-step sequential review process in determining whether a claimant qualifies as disabled." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled; if not, the analysis proceeds to step two. Id. At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled; if so, the analysis proceeds to step three. Id. At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or equals an impairment in the Listings. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled; if not, the analysis proceeds to step four. Id. At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to do his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled; if not, the analysis proceeds to step five. Id. At step five, the ALJ determines whether the claimant can do other jobs in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. Id. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." Bray, 554 F.3d at 1222.

### III. DISCUSSION

The ALJ determined that Zaucha's earnings records showed that he had acquired sufficient quarters of coverage to remain insured through December 31, 2009 ("date last insured"). AR 13. The ALJ further determined that between Zaucha's alleged onset date of August 10, 2004 and his date last insured, Zaucha did not perform substantial gainful activity (step one); did have severe impairments, specifically lumbar disc disease and right knee pain (step two); did not have impairments equaling an impairment in the Listings (step three); and did not have the RFC to perform past relevant work (step four). AR 15-17, 22. However, the ALJ found that Zaucha did have the RFC to perform light work, except for the inability to climb ladders, ropes, or scaffolds, and the inability to perform more than rare bending, squatting, crawling, kneeling, or climbing of ramps/stairs. AR 17-22. Based upon this RFC, and the testimony of a vocational expert, the ALJ concluded that Zaucha could perform other jobs that existed in significant numbers in the national economy (step five). AR 22-23. Zaucha challenges the ALJ's step five determination, asserting

that the ALJ erred in discounting evidence of kidney stones, dizziness, and fainting; failing to credit the opinion of his treating physician; and failing to credit his subjective pain complaints.

**A.     Evidence of Kidney Stones, Dizziness, and Fainting**

As is discussed below, most of the medical records in this case address Zaucha's back pain and right knee pain, and in fact the ALJ found that Zaucha had lumbar disc disease and right knee pain that combined to constitute a severe impairment. See AR 15. However, some of the medical records document various occurrences of kidney stones and dizziness and/or fainting. See AR 388-456, 470-548. Progress notes dated May 5, 2009 report three episodes of fainting – once while Zaucha "was eating after a long motorcycle ride, once 8 hours into a tattoo, and once while he was at a party." AR 596. Zaucha also testified at the administrative hearing that he has episodes of passing out. AR 60. He testified that he has always assumed that his dizziness and fainting was related to kidney stones, but recently he has been told that he has abnormal EEGs. Id.

The ALJ discounted Zaucha's claims of disability based upon kidney stones, dizziness, and fainting. AR 15-16. She observed that the kidney stones were resolved and that in any event Zaucha's records did not indicate that they resulted in incapacitating pain. Id. She also observed that the reported dizziness and fainting episodes did not appear to be seizure activity, and that there was no indication that the isolated episodes disclosed in the record met the duration requirement of the Social Security Act. AR 17. Finally, the ALJ noted that during the time frame that the kidney stones and fainting occurred, Zaucha was taking motorcycle rides, getting tattoos, and partying with friends, which activities were inconsistent with a severe impairment. AR 16.

Zaucha relies upon Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996), in asserting that the ALJ legally erred in failing to consider his kidney stones and fainting in combination with his back and leg pain. However, the cited passages of Smolen require an ALJ to consider the combined effect of all asserted impairments at the step two inquiry, when the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments. Id. In this case, the ALJ concluded at step two that Zaucha did suffer a severe impairment as a result of his back and leg pain. AR 15. The ALJ further concluded that Zaucha's impairment was so severe as to preclude him from performing his past relevant work. AR 22. Zaucha has not presented any argument or

4

1  evidence that the ALJ's failure to consider evidence of kidney stones and fainting <u>at the step five</u>
2  <u>inquiry</u> constituted error.  More specifically, Zaucha has not explained how consideration of kidney
3  stones and fainting would have affected the modified light work RFC upon which the ALJ based her
4  step five determination.  Accordingly, Zaucha has failed to demonstrate grounds for relief based
5  upon the ALJ's failure to consider his kidney stones and dizziness/fainting.

**B.   Treating Physician's Opinion**

In adopting a RFC of a limited range of light work, the ALJ rejected the opinion of Zaucha's treating physician, Dr. Lucy Lin, and instead relied upon the opinion of Dr. John Massey, who treated Zaucha prior to Dr. Lin, as well as the opinions of several consulting physicians.

"A treating physician's opinion is entitled to 'substantial weight.'" <u>Bray</u>, 554 F.3d at 1228 (quoting <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988)).  "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present 'specific and legitimate reasons' for discounting the treating physician's opinion, supported by substantial evidence." <u>Id.</u> (citing <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).[3]

The administrative record contains extensive medical evidence, which is summarized below:

**Treatment from August 2004 through October 2006**

As noted above, Zaucha claims that his disability commenced on August 10, 2004, when he suffered a work-related back injury.  However, he did not provide medical records documenting treatment received prior to October 2006.  AR 18.  Post-2006 records that summarize Zaucha's prior treatment indicate that Zaucha first sought treatment for back pain a week after the alleged onset date of August 10, 2004.  <u>See</u> AR 267.  Zaucha initially saw Dr. Robert Fonseca, then later in 2004 and 2005 saw Dr. Thao Pham, Dr. Kai Tiltmann, and an unnamed doctor in Salinas, California.  <u>See id.</u>  He saw Dr. Paul Clayman in June 2006.  <u>See id.</u>

**Dr. John Massey**

On October 3, 2006, Zaucha began receiving regular treatment from Dr. John Massey at the

---

[3] When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for disbelieving the treating physician. <u>Bray</u>, 554 F.3d at 1228 n.8.  Here, Dr. Lin's opinion is contradicted by the opinions of Dr. Massey and consulting physicians.  Accordingly, the ALJ need provide only "specific and legitimate" reasons for discounting Dr. Lin's opinion.

Bay Area Pain and Wellness Center. See AR 216-262. Dr. Massey's records from Zaucha's initial visit reflect that: Zaucha said that he had suffered a lower back injury from operating a jackhammer on August 10, 2004; he had seen an orthopedic surgeon, Dr. Clayman, who had ordered an MRI done in May 2006; the MRI showed "significant degenerative disease at L3-4, L4-5, and L5-S1," as well as flattening of the central left L5 root secondary to the degeneration and effacement of the facet joints; Zaucha had a history of kidney stones; and his treatment prior to October 2006 "included rest, some medicines, but little else." AR 258-60. Dr. Massey's initial impression was that Zaucha suffered from lumbar degenerative disc disease, right lower extremity radiculitis, and regional myofascial pain. AR 260. He concluded that Zaucha was totally temporarily disabled. AR 261.

Dr. Massey initially treated Zaucha's back injury with epidural steroid injections and pain medication. AR 248-55. When Zaucha failed to improve, Dr. Massey prescribed physical therapy. AR 248-249. Zaucha remained symptomatic after completing the course of physical therapy. AR 241. On March 5, 2007, Dr. Massey noted that Zaucha remained totally temporarily disabled, and that he was continuing to take pain medications, including Vicodin and Lodine. Id. Zaucha then participated in a Functional Restoration Program, which among other things involved taking psychoeducational classes focused on chronic pain management. See AR 218-232. He completed the program in July 2007, at which time Dr. Massey opined that he had "reached maximal medical improvement," while noting that Zaucha viewed the program as a negative experience. AR 218. Dr. Massey also noted that Zaucha had discontinued use of narcotics and expressed a desire to "move forward in his life." Id. Dr. Massey's records indicate that approximately one month later, in August 2007, Zaucha returned to Dr. Massey to request a refill of narcotic medication and help in applying for Social Security disability benefits. AR 217. Dr. Massey's records show that he denied the request for a refill of narcotic medication and that he had mailed Zaucha's medical records to "the appropriate resource on July 30, 2007." Id.[4]

**Dr. Lucy Lin**

Zaucha began seeing Dr. Lin in November 2007. AR 264. He told her that he did not

---

[4] This notation is somewhat confusing, because Zaucha did not file an application for Social Security disability benefits until March 2008. See AR 130-31.

6

experience improvement after completing the functional restoration program prescribed by Dr. Massey, and in fact had developed new pain in his right knee. AR 265. Dr. Lin's initial assessment was that Zaucha suffered from lumbar disc disease and related symptoms. Id. She requested insurance authorization for a Neurontin prescription and acupuncture. Id. She felt that he probably could work in a modified duty status. Id. After a long wait for insurance authorization, Zaucha received the Neurontin and acupuncture, which resulted in mild benefit. AR 320.

Dr. Lin continued treating Zaucha through 2009. She noted disc disease and fraying of the meniscus of the right knee. AR 320. She recommended an orthopedic consult to address the right knee injury, medication for pain, and continued acupuncture. AR 321. She felt that spinal surgery might be necessary. Id.

Dr. Lin completed a RFC questionnaire in June 2008, in which she stated that Zaucha had lumbar disc disease and right knee issues, low back pain radiating to his legs, right knee pain, and chronic pain. AR 295-99. She opined that he could sit for not more than forty-five minutes at a time and less than two hours in an eight-hour workday. Id. She opined that he could lift less than ten pounds occasionally, ten pounds rarely, and twenty pounds never. Id. She also noted significant postural limitations. Id.

**Dr. Paul Clayman**

Zaucha first saw Dr. Clayman in June 2006. AR 267. He returned for reevaluation in February 2008. AR 268. When Dr. Clayman took an updated medical history, Zaucha stated that his treatment from Dr. Massey did not help and in fact made his back and legs worse. Id. In particular, Zaucha claimed that he had developed right knee pain following a session on the treadmill that was part of Dr. Massey's functional restoration program. AR 269. Zaucha told Dr. Clayman that Dr. Massey "declared me cured because his ego won't let him say that his program didn't work." AR 268. Zaucha also complained that "[m]ost of the people who get benefit from his program are people who are strung out on pain medication, and I'm not one of those people." Id. However, Zaucha also told Dr. Clayman that he went back to Dr. Massey in August and September 2007, but that Dr. Massey "wasn't doing anything. He wouldn't give me any pain medication." AR 269. Dr. Clayman indicated that the notes he received from the functional restoration program

stated that Zaucha was discharged from the program for smoking marijuana, which was a breach of contract between the clinic and the patient. AR 269.

Zaucha stated that he currently was seeing Dr. Lin, and that she had prescribed Neurontin and acupuncture, but neither treatment had been approved by insurance. AR 269. Zaucha was taking only over-the-counter Advil when he first returned to Dr. Clayman. Id. Dr. Clayman opined that Zaucha continued to have lower back pain and had developed right knee pain; needed new MRIs; should be considered temporarily totally disabled until the new MRIs could be completed; and was "precluded to semi-sedentary work activities." AR 280-81. Dr. Clayman also recommended a number of treatments, including medication, exercises, counseling, and potentially surgery. AR 282-83.

Dr. Clayman's November 2009 notes reviewed right-knee surgery that was performed by Dr. Holmes in May 2009 and continuing treatment by Dr. Lin, including pain medications. AR 553-54. Dr. Clayman also noted Zaucha's continuing complaints of chronic pain in the lower back and legs, and in the right knee despite the surgery. AR 554. He opined that Zaucha should be considered to have been temporarily totally disabled from February 2008 through November 2009, and that after November 2009 he continues to have pain and difficulty with bending, twisting, stooping, standing, sitting, walking, pushing and pulling. AR 563. He opined that Zaucha is "precluded to semi-sedentary work." AR 565.

**Dr. Thomas Kula**

Zaucha was examined by Dr. Thomas Kula, an orthopedic surgeon, in May 2008. AR 458. Dr. Kula reviewed an MRI of the back taken in March 2008 and x-rays of the back taken in May 2008. AR 459-60. He also reviewed an MRI of the right knee taken in April 2008. AR 460. He opined that Zaucha had damage to the right knee, including degenerative type changes within the menisci and a cyst. AR 461. He stated that Zaucha's right knee injury was exacerbating his lower back problems, which included "moderately advanced degenerative changes at L3-4, L4-5 and L5-S1 with some associated neuroforaminal narrowing." Id. Dr. Kula suggested that Zaucha's right knee problem be addressed first, possibly through surgery, and that his back problem be addressed afterward, possibly through surgery. Id.

8

**Dr. Jeffrey Holmes**

Dr. Jeffrey Holmes performed surgery on Zaucha's right knee in May 2009 to repair a tear to the meniscus. AR 595-96.

**Dr. Newman**

Dr. Newman is a medical expert who testified at the administrative hearing. See AR 38-19. Based upon his examination of Zaucha's medical records, Dr. Newman testified that Zaucha could perform light work with specific postural limitations. AR 44-45.

**Medical Consultants**

Two consulting physicians, one who performed a record review in April 2008 and one who performed a record review in August 2008, concluded that Zaucha was limited to a sedentary RFC, that he could lift ten pounds frequently and ten pounds occasionally, and could stand and/or walk at least two hours in an eight hour workday. AR 286-94, 300-02.

**ALJ's Determination of Zaucha's RFC**

The ALJ considered all of the above medical evidence in concluding that Zaucha had the RFC to perform light work with specified limitations. She relied primarily upon the opinion of Dr. Massey, who treated Zaucha from October 2006 through July 2007. For example, the ALJ cited Dr. Massey's comment that Zaucha had received very little treatment in the two years following his August 2004 injury. See AR 18. She also cited Dr. Massey's notes that Zaucha had attained maximum medical improvement in July 2007, and had discontinued use of narcotic drugs for pain. See AR 19.

The ALJ also credited the opinions of two consulting physicians who reviewed Zaucha's records in April and August 2008. While those physicians ultimately opined that Zaucha was limited to a RFC of sedentary, they specified limitations consistent with the limitations that the ALJ placed on her determination of a light work RFC. See AR 286-94, 300-02. Moreover, the physician who performed the August 2008 review noted that he would have given a light work RFC, but would go along with the sedentary RFC given by the physician who performed the April 2008 review. AR 301.

Finally, the ALJ credited the opinion of Dr. Newman, the medical expert who testified at the

9

administrative hearing. See AR 20-21. The ALJ chose to credit Dr. Newman's opinion over the opinion of Zaucha's treating physician, Dr. Lin, based upon her conclusion that Dr. Lin's opinion is entitled to "little weight." See AR 21. First, the ALJ stated that "Dr. Lin did not examine the claimant until November 2007, shortly after he was kicked out of a pain management clinic for using marijuana. . . ." AR 21. It is unclear how the reason for Zaucha's termination from Dr. Massey's program would bear on the validity of Dr. Lin's opinion. However, the ALJ also noted that Dr. Lin appeared to accept Zaucha's pain complaints at face value, even when not fully supported by examination results. See AR 21. The ALJ noted inconsistencies in Dr. Lin's own treatment records, and conflicts between Dr. Lin's conclusions and those of other physicians. See id. After reviewing the ALJ's decision and the medical evidence discussed above, the court concludes that the ALJ articulated specific and legitimate reasons for discounting the opinion of Zaucha's treating physician, Dr. Lin, and instead crediting the opinions of other physicians such as Drs. Newman and Massey.

### C. Subjective Pain Complaints

Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Lester, 81 F.3d at 834. Unless there is affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Id. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.

Zaucha testified at the administrative hearing as follows: he suffers from severe pain, and as a result he cannot sleep more than two hours a night. AR 55-56. He sleeps in a recliner chair, because he cannot sleep flat in a bed. AR 63. He stays in the recliner chair about twelve hours per day. AR 64. Mornings are difficult and he cannot walk well until about noon. AR 57. His legs become fatigued if he stands for more than one or two hours. AR 58. He lives with his parents, who do his laundry, cook for him, and take care of him. Id.

The ALJ concluded that Zaucha's pain complaints were undermined significantly by the fact that he waited almost two years after suffering the initial injury before seeking regular and sustained

1 treatment. See id. She also found persuasive Dr. Massey's refusal to prescribe Zaucha further
2 narcotic pain medication and conflicts in the record regarding the extent of Zaucha's impairments.
3 See id. Finally, she noted references in the record to Zaucha engaging in activities such as riding a
4 motorcycle, driving a car, and exercising at the gym, which the ALJ concluded were not consistent
5 with the level of pain that he claimed. See id.

6      The court concludes that the ALJ articulated clear and convincing reasons for failing to
7 credit fully Zaucha's subjective pain complaints, and that she adequately identified the testimony
8 that was not credible and the evidence in the record that undermined that testimony. While other
9 evidence in the record is supportive of Zaucha's pain complaints, the ALJ's determination is a
10 reasonable one and it is supported by substantial evidence; thus, it is not this court's role to second-
11 guess it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

## IV. ORDER

13      For the foregoing reasons, IT IS ORDERED THAT:
14      1.     Plaintiff's motion for summary judgment is DENIED;
15      2.     Defendant's cross-motion for summary judgment is GRANTED; and
16      3.     The clerk shall close the file.

18 Dated: Oc{"53, 2013

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

11